Lottie C. Barwinski v. Commissioner.
Barwinski v. Commissioner
Docket No. 3536-65.
United States Tax Court
T.C. Memo 1968-26; 1968 Tax Ct. Memo LEXIS 271; 27 T.C.M. (CCH) 122; T.C.M. (RIA) 68026; February 15, 1968. Filed Lottie C. Barwinski, pro se, 4845 Woodworth St., Dearborn, Mich. Chauncey W. Tuttle, Jr., for the respondent. MVLRONEY Memorandum Opinion MULRONEY, Judge: Respondent determined a deficiency in petitioner's 1963 income tax in the amount of $149.88. After concessions by the parties, the sole issue to be decided is whether the respondent erred in disallowing the sick pay exclusion of $112.32 or any other amount claimed by Lottie C. Barwinski in her Federal income tax return for the year 1963. No facts were stipulated. Petitioner resided in Dearborn, Michigan, during 1963 and at the time her petition was filed. Her 1963 income tax return was filed with the district director of internal revenue at Detroit, Michigan. Petitioner was the only witness. She was divorced from her husband *272 prior to 1963 and during that year had custody of her daughters, Marcia and Andrea. Throughout 1963 and for some years prior thereto, petitioner was employed by the United States Government as a postal clerk at the main post office in Dearborn. On her return for 1963, she reported wages from the Dearborn Post Office in the amount of $5,048.73. Petitioner then subtracted $112.32 from this amount as "sick pay", leaving $4,936.41 before exemptions and deductions. On December 27, 1963, petitioner received an injury to her left thumb and was unable to return to work in 1963. On a piece of paper attached to the petition, petitioner computed her claimed sick pay exclusion as follows: Lost wages: 4 days in Dec. 27, 28, 29, 30, 1963 at $2.80 per hour plus 10% night differential (6 hrs. at 3.08 and 2 hrs. @ 2.80 per hr. = 5.60 or 22.48 plus 5.60 or 28.08 times 4 days in Dec. 1963 = [$]112.32. Petitioner claimed the same $112.32 for the same days in December of 1963 as part of her sick pay exclusion for 1964. Petitioner received authorized "sick leave pay" from the United States Government in 1963, as follows: 123 Date
Amount
February 19
$21.92
February 20
21.92
February 21
21.92
February 25
21.92
March 12
21.92
March 13
21.92
March 14
21.92
July 6
21.92
July 8
21.92
August 15
21.92
September 17
21.92
September 18 21.92
Total
$263.04
*273 In his notice of deficiency giving rise to this case, respondent listed four adjustments increasing petitioner's reported taxable income for 1963 as follows: (1) Gross income was increased by $112.32 representing the claimed sick pay exclusion which respondent disallowed; (2) Gross income was increased by $49.49 for a claimed interest expense deduction disallowed by respondent; (3) Gross income was further increased by $21.33 for a claimed deduction for taxes; respondent disallowed this deduction; and (4) Finally, gross income was increased by $600 because of respondent's disallowance of a dependency exemption claimed for petitioner's daughter, Andrea. The petition filed by petitioner did not allege error with respect to adjustments (2) and (3) above and no amended petition was filed. Consequently, these matters are not before us. J. Wiliam Frentz, 44 T.C. 485 (1965), affd. 375 F. 2d 662 (C.A. 6, 1967). At the trial, respondent conceded that petitioner contributed more than one-half of the total cost of support for her daughter, Andrea. With respect to the sick pay exclusion, which is the only matter remaining in dispute, the respondent determined *274 in his statutory notice of deficiency that: the amount of $112.32 claimed as an exclusion from gross income on your income tax return for the year 1963 or any other amount purporting to represent sick benefits received by you from your employer, the United States Post Office, does not fall within the purview of Section 105(d) of the Internal Revenue Code of 1954 and, therefore, your taxable income has been increased by the amount of $112.32. In her petition, Lottie Barwinski alleged an additional exclusion of $460.34 for sick pay claimed to have been received in 1963 from her employer. The narrow question presented for decision is therefore whether petitioner has met her burden of proving that she was entitled to exclude any portion of her gross income for 1963 as a result of having received excludable wage continuation sick benefits under section 105(d) of the Internal Revenue Code of 1954. [1]
Section 105 deals with amounts received under accident and health plans and, with respect to periods of absence commencing prior to December 31, 1963, [2] provided *275 as follows: (a) Amounts Attributable to Employer Contributions. - Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer. * * *
(d) Wage Continuation Plans. - Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. In the case of a period during *276 which the employee is absent from work on account of sickness, the preceding sentence shall not apply to amounts attributable to the first 7 calendar days in such period unless the employee is hospitalized on account of sickness for at least one day during such period. If such amounts are not paid on the basis of a weekly pay period, the Secretary or his delegate shall by regulations prescribe the method of determining the weekly rate at which such amounts are paid. * * * It is clear from this statute that, to be entitled to exclude sick pay for 1963, petitioner had to prove either that she was hospitalized for at least one of the days of her absence or that she was away from work because of illness for more than seven 124 calendar days at a time. Petitioner's testimony with respect to the claimed sick pay exclusion was vague, inconclusive, and, for the most part, irrelevant. Indeed if anything of substance emerges from her testimony and the more than 100 photostated bills, receipts, letters, personal notes, and the like attached to Lottie Barwinski's petition, it is that she was neither absent from work for a period in excess of seven consecutive calendar days nor hospitalized *277 at any time during 1963. This is not sufficient to entitle petitioner to a sick pay exclusion under the statute. Having set out to meet her burden of proving that the respondent erred, petitioner has instead proved, to our satisfaction, all of the facts necessary to support respondent's position. Although the Court was impressed with petitioner's determination and sincerity, there is just no relevant evidence in this record to permit us to conclude that petitioner has met her burden of proof on this item. To reflect the concessions made by respondent. Decision will be entered under Rule 50. Footnotes
1. All Code references hereinafter are to the Internal Revenue Code of 1954.↩
2. Effective December 31, 1963, section 105(d)↩ was amended by Pub. L. 88-272, § 205(a) (February 26, 1964), to limit the "7-day" rule to amounts which are at a rate not exceeding 75 percent of the regular weekly rate of wages of the employee and to add a 30-day waiting period in the case of amounts exceeding 75 percent of the employee's regular weekly rate of wages.